AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 3:25-mj-00133 |
| David Gullatte | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 2025 through March 2025__ in the county of _____Greene and Franklin_____ in the _____Southern_____ District of _____Ohio_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, USC s. 846 & 841(b)(1)(B) | conspiracy to possess with intent to distribute and to distribute 40 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance |
| Title 21, USC s. 843(b) | use of a communication facility to facilitate a Title 21 offense |

This criminal complaint is based on these facts:

See Attached Affidavit of Jordan Gula

☑ Continued on the attached sheet.

_____
*Jordan Gula*
*Complainant's signature*

Jordan Gula, SA of the FBI
*Printed name and title*

Sworn to by reliable electronic means -- namely, telephone.

Date: ___March 17, 2025___

_____
Caroline H. Gentry
United States Magistrate Judge

City and state: _____Dayton, Ohio_____

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A CRIMINAL COMPLAINT**

I, Jordan D. Gula, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of a criminal complaint and arrest warrant for David Gullatte for violations of:

a.      21 U.S.C. §§ 846 and 841(a)(1)(B) (conspiracy to possess with intent to distribute and to distribute 40 grams or more fentanyl, a Schedule II controlled substance); and

b.      21 U.S.C. § 843(b) (use of a communication facility to facilitate a Title 21 offense).

2.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing criminal laws and duly authorized by the Attorney General to request a search warrant.  I am an investigative law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

3.      I am employed as a Special Agent by the Federal Bureau of Investigation (FBI) and have been so employed since January 2016.  I am currently assigned to the FBI's Transnational Organized Crime Task Force which investigates international drug trafficking matters including, incidents impacting interstate commerce, commercial and home invasion style robberies, carjackings, kidnappings, and assaults on Federal Officers.  I have participated in numerous investigations involving violations of federal, state, and local laws, including investigations of multi-national criminal organizations, firearms violations, and drug trafficking

violations.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

**PROBABLE CAUSE**

1. Since late 2024, FBI has investigated Cedric Smith and others for their role in a drug distribution ring operating from Xenia, Ohio, and elsewhere. Through various investigative techniques – including lawfully obtained phone recordings and witness statements -- FBI has learned that Smith is a poly-substance drug trafficker who sells controlled substances from multiple locations in Xenia, Ohio. Through these same sources, FBI has discovered that David Gullatte served as a source of drug supply for Smith. As detailed more fully below, in arranging in drug transactions with Smith, Gullatte used his cellular telephone number (213) 212-0229, (hereinafter, the "GULLATTE DEVICE:).

2. In or around February 2025, the Honorable Thomas M. Rose, United States District Court Judge, authorized the interception of wire communications to and from Smith's cellular telephone (hereinafter "Smith Phone"). Pursuant to that authorization, between mid-February 2025 and early March 2025, FBI intercepted numerous calls over the Smith Phone in which Smith engaged in drug trafficking activity, including the distribution of fentanyl and cocaine.

3. During the court-authorized interception over the Smith Phone, FBI identified individuals supplying controlled substances to Smith, including Gullatte. Specifically, between February 2025 and March 2025, FBI intercepted calls over the Smith Phone in which Gullatte,

using the GULLATTE DEVICE[1] – arranged the delivery of controlled substances to Smith.  For

instance, on or about February 24, 2025, pursuant to the wiretap, law enforcement intercepted the

following call between Gullate at the GULLATTE DEVICE and Smith at the Smith Phone:

Gullatte: Hello.

Smith: What up doe?

Gullatte: Alright, call them people, I'm on my way up there bringing them damn weed to Amanda.

Smith: Alright, gotta make sure you about to be on your way. Cuz I be making him stay down there.

Gullatte: I had to make em myself, that's y i'm just now bringing it.

Smith: Alright.

Gullatte: That n***** didn't want to do shit today.

Smith: Alright.

Gullatte: Yeah I'm coming myself, right now.

---

[1] Law enforcement identified Gullatte as the user of the GULLATTE DEVICE through several means.  First, during December 2024, law enforcement first noticed the number for the GULLATTE DEVICE appearing on toll records of, among others, Ernesto Villalobos, Anthony Franklin, Eric Payne, and Smith.  FBI previously had identified these men as drug trafficking associates of Gullatte.  FBI compared call patterns on the GULLATTE DEVICE with those of known numbers used by Gullatte, and the call patterns between these devices largely mimicked one another, indicating that the same person used all of these lines.  Second, on or about February 4, 2025, FBI placed a call to the GULLATTE DEVICE from a spoofed (i.e., disguised) number with a 213-area code.  An agent who has interacted with Gullatte and spoken with him previously on the telephone listened in on the call.  FBI called the GULLATTE DEVICE and a man identified as Gullate answered the call.  Finally, during interceptions over the Smith Phone, FBI intercepted calls from the GULLATTE DEVICE.  FBI agents recognized Gullatte's voice and confirmed his identity as the individual using the GULLATTE DEVICE.

Smith:         Alright.

Based on my training and experience, as well my familiarity with this investigation, I believe that, during this call, Gullatte advised that he would deliver marijuana for resale to Smith in Xenia, Ohio.  As detailed below, at this time of this call, it appears that Gullate lived in Columbus and planned to drive the drugs to Smith.

4.         On or about March 1, 2025, pursuant to the wiretap, law enforcement intercepted the following call between Gullate at the GULLATTE DEVICE and Smith at the Smith Phone:

Gullatte:           What up bruh?

Smith:             Tell him I need him super fast, cause Cuz on his way.

(inaudible as they talked over each other)

Gullatte:           He had me call and push you.

Smith:             Yeah cause he like, uh, Cuz said he like 45 minutes out.

Gullatte:           So just wantin' him come come?

Smith:             Yeah, tell him come on now.

Gullatte:           Alright.

Shortly after the conversation described above, Gullatte at the GULLATTE DEVICE and Smith engaged in the following lawfully intercepted call over the Smith Phone:

Gullatte:     What up brother?

Smith:         He take off yet?  Cuz here.  I'm on my way to Cuz, he there waiting on me.

Gullatte:     He already left.

Smith:         Alright, how long you think it will take him?  Like 45 minutes or something?

Gullatte:     Nah, see the address, I mean see the uh, Tiguan.  He probably on his way

4

now.

Smith:          Alright

Gullatte:          Alright.

Based on my training and experience, as well as knowledge of this case, I believe that, during these conversations, Gullatte had dispatched to Smith a courier who planned to deliver drugs (as detailed below, confirmed to be fentanyl).  During the calls, Smith inquired concerning the status of the drug delivery, and Gullatte assured Smith that the courier was on his way.

5.     On or about March 3, 2025, pursuant to the wiretap, law enforcement intercepted the following call between Gullate at the GULLATTE DEVICE and Smith at the Smith Phone:

Smith:          What up tho?

Gullatte:          I just met my n**** and got 2 zips of this shit so now I got to come meet you with it. I met him at the outlet so.

Smith:          Alright alright

Gullatte:          Better you now with it.

Smith:          How do I do it bro? I don't know what

Gullatte:          I ain't gonna lie to you bro I ain't did that shit in so damn long.I just hung the shit out in the damn wrapper.I didn't know anyone was still running dope with the sauce in there. I didn't even know

Smith:          Yeah

Gullatte:          If I had to guess I would probably put a zip on every 4 or 4.5. I don't know that shit is gonna be strong tho. More power in a pack

Smith:          Err

Gullatte:          Zip on every 4.5 I got 2 licks on me tho so

Smith:      Alright. What is it K, special K?

Gullatte:   No xylazine (sounds like)

Smith:      Alright

Gullatte:   What's the address?

Smith:      I'm at 942. I got the one house together bro. You should see this bitch I'm damn near right. Its ready already.

Gullatte:   I need to pull up on you doing that and see it myself instead of the video

Smith:      Yep yep

Gullatte:   They got a club for sale on the east side of Dayton right now for $40,000. Its got a little bar. Little bar

Smith:      Damn yeah lets go half on it nigga

Gullatte:   Last night I seen it last night I seen it bro I swear to god

Smith:      Yeah (mumbling)

Gullatte:   Its already zoned for a club and everything. I was lost when I see this bitch. Yeah it slipped in my email late last night

Smith:      Damn

Gullatte:   All you are going to get a blender tho and blend it. Shit I would throw it all in there for real for real. Do it all at one time. That shit will have you fucked up

Smith:      Alright alright (mumbling)

Gullatte:   Send me the address right now tho

Based on my training and experience, as well as knowledge of this investigation, I believe that, during this call, Gullatte advised Smith that he (Gullatte) had acquired at least two ounces (i.e., 2

6

licks) of powerful fentanyl mixed with xylazine.  Gullatte advises Smith that, once Gullatte delivers the drugs to him, Smith can further dilute the fentanyl with additional cutting agents given its potency.  Gullatte advised Smith to mix the fentanyl and cutting agents in a blender.  In short, through this call, Gullatte indicated that he had over 40 grams of fentanyl in his possession that he intended to give to Smith for resale.

6.      On or about March 4, 2025, an individual identified herein as Cooperating Defendant 2 ("CD2") contacted law enforcement regarding Gullate's activities.  It should be noted that CD2 has prior drug convictions; CD2 voluntarily contacted law enforcement out of apparent animus towards Gullate.  CD2 confirmed that Gullatte was residing in a new apartment building in downtown Columbus, Ohio.  CD2 also stated Gullatte was acquiring drugs from Ernesto Villalobos, as well as an individual named "Junior".  CD2 identified a photograph of Wenceslau Ceja ("Ceja") as the person CD2 knew as "Junior".  According to CD2, Gullatte received weekly drug shipments from this duo and that both Ceja and Villalobos frequently visited Gullatte's Columbus apartment to ensure that he could pay for the drugs.  Notably, since 2024, law enforcement has known Villalobos as a drug trafficker operating from the Los Angeles, California metro area and has intercepted drug parcels (including fentanyl and cocaine) that he has sent to Ohio and other locations. I believe the information provided by CD2 to be credible and reliable as it has been corroborated through other sources of reporting and databases containing investigative information.

7.      On or about March 6, 2025, FBI interviewed Cooperating Defendant 3 ("CD3") concerning GULLATTE's activities. It should be noted that CD3 has prior drug convictions and agreed to speak with law enforcement to mitigate sentencing exposure in a pending prosecution. During this interview, based on CD3's personal knowledge, CD3 confirmed Gullatte served as

7

Smith's source of fentanyl supply and that Gullatte had recently delivered a strong batch of fentanyl (at least over 40 grams of that drug) to Smith in early March 2025. According to CD3, Gullatte dispatched a courier driving a Volkswagen Tiguan to deliver these drugs to Smith. I have been able to corroborate significant portions of CD3's statements and therefore consider CD3 to be reliable and truthful.

8.      Based on the facts set forth in this affidavit, there is probable cause to believe Gullatte has violated 21 U.S.C. §§ 846 and 841(b)(1)(B) (conspiracy to possess with intent to distribute and to distribute 40 grams or more fentanyl, a Schedule II controlled substance); and 21 U.S.C. § 843(b) (use of a communication facility to facilitate a Title 21 offense). I therefore respectfully request that a criminal complaint and arrest warrant be issued for Gullatte.

Respectfully submitted,

*Jordan Gula*

Jordan Gula
Special Agent
Federal Bureau of Investigation

by telephone
Subscribed and sworn to before me on March __17__, 2025:

Caroline H. Gentry
United States Magistrate Judge

8